IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PGT TRUCKING, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-4503 |
| | : | |
| EVANSTON INSURANCE COMPANY | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                         **February 25, 2025**

This is a dispute about insurance coverage. Plaintiff PGT trucking, Inc. ("PGT") is a transportation broker and motor carrier with a transportation broker liability policy issued by Defendant Evanston Insurance Company ("Evanston"). PGT was involved in a shipment that resulted in a motor vehicle accident, triggering personal injury lawsuits against PGT. Pursuant to the policy, PGT sought coverage for the personal injury lawsuits from Evanston and was denied. PGT then filed this action, bringing claims for bad faith denial (Count I), declaratory judgment (Count II), and breach of contract (Count III). Evanston answered with a counterclaim for declaratory judgment. Both parties have now moved for judgment on the pleadings. Because there is a factual dispute as to whether PGT was the motor carrier for the shipment, the motions will be denied for the breach of contract claim (Count III) and Evanston's counterclaim. Evanston's motion will be granted for the bad faith claim (Count I), and the declaratory judgment claim (Count II) will be dismissed as duplicative.

**BACKGROUND**

PGT is a transportation company authorized by the United States Department of Transportation to act as both a transportation broker and a motor carrier. Compl. ¶ 3, ECF No. 1; PGT Mot. and Opp'n 7 n.1, ECF No. 17. On June 1, 2021, PGT was insured by Evanston for liabilities as a transportation broker pursuant to Evanston's Transportation Broker Liability Policy

Number TBL 1643-B02 (the "Policy"). Compl. ¶ 5; Evanston Answer 1-2, ECF No. 6. In relevant part, the Policy states:

> SECTION I – LIABILITY COVERAGE
> 1. We will pay those sums an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", and applicable "covered pollution or cost expense", to which this insurance applies, caused by an "accident":
>     i. Resulting from a "motor carrier's" ownership, maintenance or use, including loading and unloading, of a "motor carrier's auto"; or
>     ii. Arising out of the negligent hiring of or entrustment to the "motor carrier" by the insured in the insured's operations as a "transportation broker"
>
> . . .
>
> C. Exclusions
> This is insurance does not apply to
>
> . . .
>
> 12. Motor Carrier Operations
> "Bodily Injury" or "property damage" arising directly or indirectly out of an "accident" when the insured, a spouse or family member of the insured, an "employee" of the insured, or any entity in which the insured has partial or full ownership, is acting as the "motor carrier" or is listed on the bill of lading or contract of carriage.

Transportation Broker Liability Policy 22-24, ECF No. 1-4.

On June 1, 2021, PGT was involved in a motor vehicle accident when a tractor-trailer transporting two rolls of steel lost the load, causing a collision with other drivers on the road. Compl. ¶ 7. As a result of the collision, two drivers filed personal injury lawsuits against PGT in Missouri state court alleging bodily injuries (the "Underlying Lawsuits").[1] *Id*. ¶¶ 6-7. The Underlying Lawsuits allege PGT operated "as a broker and/or transportation company and/or acted as an agent for the shipper" and "owed a duty to select a motor carrier that was adequately safe

---

[1] The Underlying Lawsuits are *Schumer v. J Vanwinkle Trucking, LLC, et al.*, Case No. 22CG-GC00195, Circuit Court of Cape Girardeau County, Missouri and *Marshall v. J Vanwinkle Trucking, LLC, et al.*, Case No. 22CG-CC00245, Circuit Court of Cape Girardeau County, Missouri. Compl. ¶ 6; Evanston Answer 11, ECF No. 6.

and compliant." *Id*. ¶ 9. The load of two steel rolls involved in the accident were being transported pursuant to Bill of Lading No. 1194074 (the "Bill of Lading").[2] *Id*. ¶ 16; ECF No. 6 at 13. The Bill of Lading includes the following "CARRIER: PGT TRUCKING INC." Bill of Lading, ECF No. 6-2.[3]

PGT asserts it was only a transportation broker for the shipment and was mistakenly listed as a carrier by a third-party shipper who created the Bill of Lading.[4] Compl. ¶¶ 16, 19. PGT sought coverage from Evanston pursuant to the Policy for the Underlying Lawsuits. *Id*. ¶¶ 12-22. Based on the motor carrier exclusion in the Policy and PGT's inclusion in the Bill of Lading, Evanston denied coverage for the Underlying Lawsuits. Evanston Answer 13-14, ECF No. 6.

PGT then filed the Complaint on August 27, 2024, claiming bad faith denial of coverage (Count I), declaratory judgment in its favor (Count II), and breach of contract (Count III). Evanston answered with a counterclaim for declaratory judgment in its favor on November 18, 2024. Evanston moved for judgment on the pleadings on all Counts of the Complaint and its counterclaim. Evanston Mot., ECF No. 16. PGT moved for judgment on the pleadings on Counts II and III of the Complaint.  PGT Mot. and Opp'n, ECF No. 17.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P.

---

[2] A bill of lading is a "transportation contract between a shipper/consignor (i.e., a seller of goods) and a carrier." *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003).

[3] The Court may consider the Bill of Lading because it is "integral" to the claims. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[4] In its opposition, PGT asserts the motor carrier for the shipment was "J. VanWinkle Trucking, LLC." PGT Mot. and Opp'n 3, ECF No. 17.

12(c). The court analyzes a motion for judgment on the pleadings under the same standard as a motion to dismiss for failure to state a claim. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Thus, a court "may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id*. (internal quotation marks and citation omitted). "In other words, a motion for judgment on the pleadings can be granted only if the non-movant cannot prevail under any set of facts." *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 297 (E.D. Pa. 2021).

In evaluating the motion, the court must take "the complaint's well-pleaded facts as true and construe[] all allegations and inferences in the light most favorable to the nonmoving party." *Id*. at 297. Beyond the complaint, the court may consider "exhibits attached to the complaint," "matters of public record," and documents "integral to or explicitly relied upon in the complaint." *Schmidt*, 770 F.3d at 249 (emphasis, citation, and internal quotation marks omitted). "Where both parties file motions for judgment on the pleadings, each party's right to a judgment must be determined from a consideration of the party's own motion as though no motion had been filed by the other party." *Essential Utilities, Inc. v. Swiss Re Grp.*, 654 F. Supp. 3d 476, 480 (E.D. Pa. 2023) (internal quotation marks and citation omitted).

**DISCUSSION**

As an initial matter, PGT's claim for declaratory judgment (Count II) is dismissed because it is duplicative of its breach of contract claim. *See Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019) ("Courts generally decline granting declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim in the cause of action"); *Siegel v. Goldstein*, 657 F. Supp. 3d 646, 662 (E.D. Pa. 2023) ("Declaratory judgments are generally

4

inappropriate when they duplicate other claims."). Both claims concern Evanston's failure to defend and indemnify PGT in the Underlying Lawsuits. *See* Compl. ¶¶ 31-41.

Turning to PGT's bad faith denial claim (Count I), under Pennsylvania law, a plaintiff must prove by clear and convincing evidence "that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003). A plaintiff "must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." *Houtz v. State Farm Fire & Cas. Co.*, 735 F. Supp. 3d 535, 539 (E.D. Pa. 2024) (internal quotation marks and citation omitted). Evanston's denial was based on the Bill of Lading, submitted to Evanston by PGT, and the Policy. The Bill of Lading clearly lists PGT as the carrier and the Policy explicitly excludes coverage when PGT is "acting as the motor carrier or is listed on the bill of lading." Transportation Broker Liability Policy 24, ECF No. 1-4. PGT argues Evanston's denial was in bad faith because it "was based on a third party's factually inaccurate Bill of Lading." Compl. ¶ 26. However, PGT never provided "a different bill of lading" to Evanston. Evanston Answer, ECF No. 6. Given the facts and explicit language of the policy, Evanston had a reasonable basis for denial of coverage. Accordingly, Evanston's motion is granted for the bad faith claim.

PGT next alleges Evanston breached the Policy by failing to defend and indemnify it in the Underlying Lawsuits. Generally, an insurer "has a duty to defend its insured when the allegations in the complaint against it could potentially fall within the coverage of the policy." *Am. Guarantee & Liab. Ins. Co. v. L. Offs. of Richard C. Weisberg*, 524 F. Supp. 3d 430, 454 (E.D. Pa. 2021). To determine if Evanston has a duty to defend PGT, the Court must interpret the Policy. *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006) ("The

5

interpretation of an insurance policy is question of law" to be determined by the court). Courts are tasked with interpreting "the intent of the contracting parties, as they objectively manifest it." *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999). The first step in interpreting a contract is to determine whether it is ambiguous. *Id*. A contract is ambiguous if more than one reasonable interpretation exists. *Ungarean v. CNA & Valley Forge Ins. Co.*, 323 A.3d 593, 604 (Pa. 2024). Courts may not "distort the meaning of the language or resort to a strained" interpretation to find ambiguity. *Id*. (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999)). Where the contract is clear and unambiguous, the plain meaning of the terms control. *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 244 (Pa. 2024).

Looking at the Policy as a whole, it is clear the purpose of the Policy is to provide liability coverage when PGT is a transportation broker and exclude liability coverage when PGT is a motor carrier. *See Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 463-64 (Pa. 2015) (finding that "the entire contract should be read as a whole ... to give effect to its true purpose."). The motor carrier exclusion in the Policy is clear and unambiguous. It excludes coverage for any "bodily injury or property damage arising directly or indirectly out of an accident when the insured . . . is acting as the motor carrier or is listed on the bill of lading or contract of carriage." Transportation Broker Liability Policy 24, ECF No. 1-4. The Bill of Lading supports Evanston's contention that it does not have a duty to defend PGT in the Underlying Lawsuits because the motor carrier exclusion applies. However, PGT has alleged it was mistakenly listed on the Bill of Lading by a third-party and was not in possession of steel rolls at the time of the accident. PGT maintains it was a transportation broker and a third party was the carrier. If PGT is correct, then Evanston may have a duty to defend PGT in the Underlying Lawsuits because it "potentially fall[s] within the coverage of the policy" for broker liability. *See Am. Guarantee & Liab. Ins. Co.*, 524 F. Supp. 3d at 454.

This presents a material factual dispute that cannot be decided on the pleadings. Accordingly, the parties' motions are denied for the breach of contract claim.

Evanston counterclaims for declaratory judgment declaring that it does not have a duty to defend. Because this counterclaim presents the same material factual dispute as discussed earlier, Evanston's motion for the counterclaim is denied.

**CONCLUSION**

In sum, the parties' motions are denied for the breach of contract claim (Count III) and Evanston's counterclaim because there is a factual dispute as to whether PGT was the motor carrier for the shipment. Evanston's motion is granted for the bad faith claim (Count I) because it had a reasonable basis for denial. Finally, the declaratory judgment claim (Count II) is dismissed because it is duplicative of the breach of contract claim.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.