HIIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PGT TRUCKING, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-4503 |
| | : | |
| EVANSTON INSURANCE COMPANY | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                  **July 8, 2025**

This is a dispute about insurance coverage. Plaintiff PGT Trucking, Inc. ("PGT") is a transportation broker and motor carrier with a transportation broker liability policy issued by Defendant Evanston Insurance Company ("Evanston"). PGT was involved in a shipment that resulted in a motor vehicle accident, triggering personal injury lawsuits against PGT. Pursuant to the policy, PGT sought coverage for the personal injury lawsuits from Evanston and was denied. PGT then filed this action, bringing claims for bad faith denial (Count I), declaratory judgment (Count II), and breach of contract (Count III). Evanston answered with a counterclaim for declaratory judgment. The Court previously dismissed Counts I and II on cross-motions for judgment on the pleadings. The parties have now filed cross-motions for summary judgment. The pending two claims are Count III, alleging Evanston breached the policy by failing to defend and indemnify PGT in the underlying personal injury lawsuits, and Evanston's counterclaim for declaratory judgment that it has no duty to defend or indemnify PGT. Because there is no dispute that PGT was listed on the bill of lading and because the policy explicitly excludes coverage when PGT is listed on the bill of lading, the Court will grant Evanston's motion and deny PGT's motion.

**BACKGROUND**

PGT is a transportation company authorized by the United States Department of Transportation to act as both a transportation broker and a motor carrier. From June 30, 2020 to

June 30, 2021, PGT was insured by Evanston for liabilities as a transportation broker pursuant to Evanston's Transportation Broker Liability Policy Number TBL 1643-B02 (the "Policy"). Transportation Broker Liability Policy 8, Pl.'s Ex. R, ECF No. 40-22. In relevant part, the Policy states:

> SECTION I – LIABILITY COVERAGE
> 1. We will pay those sums an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", and applicable "covered pollution or cost expense", to which this insurance applies, caused by an "accident":
>     i. Resulting from a "motor carrier's" ownership, maintenance or use, including loading and unloading, of a "motor carrier's auto"; or
>     ii. Arising out of the negligent hiring of or entrustment to the "motor carrier" by the insured in the insured's operations as a "transportation broker"
>
> . . .
>
> C. Exclusions
> This is insurance does not apply to
>
> . . .
>
> 12. Motor Carrier Operations ["Exclusion 12"]
> "Bodily Injury" or "property damage" arising directly or indirectly out of an "accident" when the insured, a spouse or family member of the insured, an "employee" of the insured, or any entity in which the insured has partial or full ownership, is acting as the "motor carrier" or is listed on the bill of lading or contract of carriage.
>
> 13. Other Operations
> Any operations by or on behalf of the insured other than operations as a "transportation broker".

ECF No. 40-22 at 22-24.

On June 1, 2021, PGT was involved in a motor vehicle accident when a tractor-trailer transporting two rolls of steel lost the load, causing a collision with other drivers on the road. Schumer Compl. ¶¶ 3-40, ECF No. 1-4, Ex. B; Marshall Compl. ¶¶ 3-40, ECF 1-4, Ex. C. As a result of the collision, two drivers filed personal injury lawsuits against PGT in Missouri state

court alleging bodily injuries (the "Underlying Lawsuits").[1] Schumer Compl., ECF No. 1-4, Ex. B; Marshall Compl., ECF 1-4, Ex. C. The Underlying Lawsuits allege, in the alternative, that PGT acted as a motor carrier and/or transportation broker for the shipment. Schumer Compl. ¶¶ 182-87, ECF 1-4, Ex. B; Marshall Compl. ¶¶ 182-87, ECF 1-4, Ex. C. The load of two steel rolls involved in the accident were being transported pursuant to bill of lading No. 1194074 (the "Bill of Lading").[2] Schumer Compl. ¶ 19, ECF No. 1-4, Ex. B; Marshall Compl. ¶ 19, ECF 1-4, Ex. C. The Bill of Lading includes the following "CARRIER: PGT TRUCKING INC." Bill of Lading, ECF No. 6-2.

PGT asserts it was only a transportation broker for the shipment and was mistakenly listed as a motor carrier by a third-party shipper, Nucor Corporation ("Nucor"), who created the Bill of Lading. PGT's Am. Mot. Summ. J. 7, ECF No. 42. According to PGT, the carrier for the shipment was J. VanWinkle Trucking, LLC ("VanWinkle"). *See* Missouri Crash Rep., Pl.'s Ex. A, ECF No. 40-5; PGT and VanWinkle Broker Agreement, Pl.'s Ex. E, ECF No. 40-9. PGT sought coverage from Evanston pursuant to the Policy for the Underlying Lawsuits. Pl.'s Ex. L, ECF No 40-16. On November 15, 2022, Evanston denied coverage for the Underlying Lawsuits based on PGT's inclusion on the Bill of Lading. Evanston Coverage Position Letter 5, ECF No. 41-6.

PGT filed the Complaint on August 27, 2024, claiming bad faith denial of coverage (Count I), declaratory judgment in its favor (Count II), and breach of contract (Count III) for Evanston's

---

[1] The Underlying Lawsuits are *Schumer v. J Vanwinkle Trucking, LLC, et al.*, Case No. 22CG-GC00195, Circuit Court of Cape Girardeau County, Missouri and *Marshall v. J Vanwinkle Trucking, LLC, et al.*, Case No. 22CG-CC00245, Circuit Court of Cape Girardeau County, Missouri. The plaintiffs in the Underlying Lawsuits are Laura Schumer and Nina Marshall (the "Underlying Plaintiffs"). Schumer Compl., ECF 1-4, Ex. B; Marshall Compl., ECF 1-4, Ex. C.

[2] "A bill of lading is a written document given by a carrier to a shipper, acknowledging that goods have been received and agreeing to transport and deliver them at a specified place for a given consideration." 22 Williston, Contracts § 59:2 (4th ed. 2025).

3

failure to defend and indemnify PGT in the Underlying Lawsuits. On November 18, 2024, Evanston answered with a counterclaim for declaratory judgment requesting a declaration that it has no duty to defend or indemnify PGT. Following cross-motions for judgment on the pleadings, the Court dismissed Counts I and II of the Complaint. The only remaining claims for summary judgment are Count III, the breach of contract claim, and Evanston's counterclaim for declaratory judgment. The Court held oral argument on the motions on June 12, 2025.

**STANDARD OF REVIEW**

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id*. at 248. To defeat summary judgment, "a nonmoving party must adduce more than a mere scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding a motion for summary judgment, a court can consider evidence that is "capable of being admissible at trial." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (citation and quotation marks omitted). The court must "view all facts in the light most favorable to the non-moving party and draw all inferences in that party's favor." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (alteration, quotation marks, and citation omitted).

**DISCUSSION**

PGT claims Evanston breached its duty under the Policy by failing to defend PGT in the Underlying Lawsuits. Evanston asserts coverage is excluded under the Policy because PGT was listed on the Bill of Lading. Evanston Mot. Summ. J. 8-9, ECF No. 41-1. Thus, according to Evanston, it has no duty to defend PGT in the Underlying Lawsuits. *Id*.

To prevail on a breach of contract claim under Pennsylvania law, a plaintiff must establish (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach. *Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020). "[A]t base, an insurance policy is nothing more than a contract between an insurer and an insured." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019). Generally, an insurer "has a duty to defend its insured when the allegations in the complaint against it could potentially fall within the coverage of the policy." *Am. Guarantee & Liab. Ins. Co. v. L. Offs. of Richard C. Weisberg*, 524 F. Supp. 3d 430, 454 (E.D. Pa. 2021) (quoting *Air Prods. & Chems., Inc. v. Hartford Acc. & Indem. Co.*, 25 F.3d 177, 179 (3d Cir. 1994)).

A court's first step in an action "concerning insurance coverage is to determine the scope of the policy's coverage." *Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 574 (3d Cir. 2024) (quoting *Gen. Acc. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997)). "In making that determination, '[t]he policy must be read as a whole and construed in accordance with

5

the plain meaning of terms.'" *Id*. at 575 (quoting *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011)). The second step is to "examine the complaint in the underlying action to ascertain if it triggers coverage." *Allen*, 692 A.2d at 1095. "'Whether a claim is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.'" *Twin City Fire Ins. Co.*, 118 F.4th at 575 (quoting *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 268 (Pa. 2020) (internal quotation and citation omitted)). The allegations in the underlying complaint "are to be taken as true and liberally construed in favor of the insured." *Moore*, 228 A.3d at 268 (internal quotation and citation omitted). "And, if any doubt or ambiguity exists, it must be resolved in favor of coverage." *Id*.

Based on the language of the Policy, coverage is provided when PGT is a broker and excluded when PGT is not a broker (e.g., PGT is a motor carrier). The terms of the Policy consistently distinguish between broker and non-broker and outlines the coverage consequences for each classification. For example, the Policy is titled "Transportation Broker Liability." Pl.'s Ex. R at 21, ECF No. 40-22. The liability provision states that Evanston will provide liability coverage for certain damages "by the insured in the insured's operations as a 'transportation broker.'" *Id*. at 22. Exclusion 12 excludes coverage if PGT is "acting as the 'motor carrier' or is listed on the bill of lading or contract of carriage," and Exclusion 13 excludes coverage for any "operations by or on behalf of [PGT] other than operations as a 'transportation broker.'" Accordingly, the scope of the Policy's coverage is limited to PGT's role as a broker.

A liberal reading of the complaints in the Underlying Lawsuits reveals that the Underlying Plaintiffs pleaded in the alternative that PGT acted as a broker and/or non-broker for the shipment. For example, in one instance, the Underlying Plaintiffs allege PGT "was a carrier within the meaning of statutes and regulations pertinent to the Federal Motor Carrier Safety Regulations."

6

Schumer Compl. ¶ 182, ECF 1-4, Ex. B; Marshall Compl. ¶ 182, ECF 1-4, Ex. C. In another instance, the Underlying Plaintiffs allege PGT owed a duty to "hire safe, experienced, and qualified individuals/entities to secure and cargo and/or transport the cargo" and "hired and accepted Defendant VanWinkle as its agent in the transaction." Schumer Compl. ¶¶ 186-87, ECF 1-4, Ex. B; Marshall Compl. ¶¶ 186-87, ECF 1-4, Ex. C. The statutory definition of a transportation broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2); *see also Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 Fed. Appx. 284, 287 (3d Cir. 2019) (a broker is "an entity [that] merely agrees to locate and hire a third party to transport the goods"). While the Underlying Plaintiffs do not use the term "broker," the complaints allege PGT performed the function of a broker by hiring VanWinkle to transport the cargo. This is sufficient to trigger coverage under the Policy because, according to the allegations, PGT could potentially have been the broker for the shipment. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) (It "is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend").

However, Evanston may exclude coverage under Exclusion 12 because PGT is listed on the Bill of Lading. Exclusion 12 explicitly states that coverage does not apply if PGT "listed on the bill of lading or contract of carriage." ECF No. 40-22 at 24. There is no dispute that PGT is listed on the Bill of Lading. PGT, however, asserts its inclusion on the Bill of Lading was a mistake by Nucor that renders Exclusion 12 inapplicable. To support its claim that it was mistakenly included on the Bill of Lading, PGT cites an affidavit by a Nucor employee, Janet Moody. Moody attests that the Bill of Lading was created by Nucor's computer system and involved both manual

and automated inputs. Moody Aff., Pl.'s Ex. H, ECF No. 40-12. According to Moody, Nucor's computer system "automated the entry" of PGT to the Bill of Lading based on previous transactions between Nucor and PGT, and PGT was not involved in the creation of the Bill of Lading. *Id*. ¶¶ 9, 11. This, however, is insufficient to nullify Exclusion 12 for two reasons. One, Exclusion 12 clearly prohibits coverage when PGT is listed on the bill of lading without qualification as to why or how PGT is included. Two, when applying for the Policy, PGT specifically acknowledged that its broker agreement requires the bill of lading to list the carrier and not PGT. PGT Appl. 3, Def.'s Ex. D-1, ECF No. 45-3. Therefore, Evanston does not have a duty to defend PGT under the Policy because Exclusion 12 applies.

And because the Court finds there is no duty to defend, the Court also finds there is no duty to indemnify. *See Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005) ("Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend.").

**CONCLUSION**

Because PGT was listed on the Bill of Lading, Evanston's motion for summary judgment will be granted, PGT's motion will be denied, and judgment will be entered in favor of Evanston.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.